

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-13-2000

# Nicholas v. Pennsylvania State Univ

Precedential or Non-Precedential:

Docket 98-7611

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Nicholas v. Pennsylvania State Univ" (2000). *2000 Decisions.* Paper 197.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/197

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 13, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7611

W. CHANNING NICHOLAS, M.D.,

      Appellant

v.

PENNSYLVANIA STATE UNIVERSITY, by its officers,
agents and Trustees; WILLIAM EVANS, PH.D., individually
and as Director of the Noll Human Performance
Laboratory

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

(Dist. Court No. 96-cv-01101)
District Court Judge: Malcolm Muir

Argued: June 30, 2000

Before: ALITO and McKEE, Circuit Judges, and
FULLAM, District Judge*

(Opinion Filed: September 13, 2000)

        ROBERT S. MIRIN (Argued)
        Ahmad & Mirin
        8150 Derry Street
        Harrisburg, PA 17111

        Counsel for Appellant

_____

* The Honorable John P. Fullam, Senior Judge of the United States
District Court for the Eastern District of Pennsylvania, sitting by
designation.

JAMES M. HORNE (Argued)
KATHERINE M. ALLEN
McQuaide Blasko Schwartz Fleming
 & Faulkner Inc.
811 University Drive
State College, PA 16801

Counsel for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

Appellant, Dr. W. Channing Nicholas, was fired from his
tenured professorship at Pennsylvania State University
following a series of run-ins with his new supervisor, Dr.
William Evans. Nicholas brought suit against the University
and Evans alleging, inter alia, violation of procedural and
substantive due process, retaliatory firing in violation of the
First Amendment, and breach of contract. The District
Court determined that the University had breached
Nicholas's tenure contract, but entered judgment in favor of
the defendants on all other counts.

Nicholas raises a host of substantive and procedural
arguments on appeal. Most importantly, he claims that his
tenured professorship was a property interest entitled to
protection under the substantive component of the Due
Process Clause. Because we find that this argument--like
Nicholas's other grounds for appeal--is without merit, we
will affirm.

I.

In 1966, Nicholas was named Associate Professor of
Physiology at Pennsylvania State University's Noll Human
Performance Laboratory. After receiving tenure in 1973,
Nicholas supplemented his income with various outside
jobs, including work as an emergency room physician for
Centre Emergency Medical Associates. The University
claims that Nicholas worked full-time in the emergency
room and consequently was unable to work regular hours

at Noll Lab. Nicholas disputes this, claiming that his emergency room work was only part-time.

In July 1993, the University hired Evans as the new director of Noll Lab. On his arrival, Evans--who was now Nicholas's supervisor--requested that Nicholas provide him with information about his curriculum vitae and research plans, as well as a written schedule for his work at Noll Lab. In particular, Evans requested an assurance that Nicholas would maintain a full-time presence with regular hours at the Lab--a concern he claims was raised by Nicholas's outside work. Nicholas was not forthcoming with this information.

On several occasions during the next few months, Evans provided Nicholas with written warnings, stating that Nicholas had jeopardized his position with the University by refusing to provide the requested information. At a meeting on May 10, 1994, Evans formally notified Nicholas that he would be terminated if he did not respond to Evans's requests. Nicholas refused to provide any assurance at that meeting, or at another meeting with Dr. Peter Farrell, that he would work full-time hours at the Lab. On May 20, 1994, several members of the Noll Lab facility wrote to Dean Herbert A. Lundegren to express their concern that Nicholas could no longer provide medical coverage for their research efforts. On June 17, 1994, Evans handed Nicholas his termination letter.

According to Nicholas, Evans's charges of insubordination were merely a pretext. In reality, Nicholas alleges, his termination was the consequence of a personal vendetta waged against him by Evans, which was prompted in part by Nicholas's objections to Evans's research methods. Prior to his termination, Nicholas had contacted the State Board of Medicine to complain about Evans's proposal to have non-medical personnel perform muscle biopsies independent of any medical supervision. The University subsequently adopted Nicholas's position and directed that the muscle biopsies be performed only by medical personnel.

Nicholas appealed his termination. The University provided him with a detailed statement of charges, and the

3

University's Standing Joint Committee on Tenure held a full hearing in January 1995. Nicholas was represented by counsel at the hearing, and had an opportunity to call witnesses and cross-examine the University's witnesses. The Committee found that three of the five charges lodged against Nicholas by the University constituted adequate cause for terminating his tenure. Based on the Committee's findings, the President of the University upheld Nicholas's termination. Following his termination, Nicholas worked full-time as a doctor at area hospitals, making more in money and benefits than before his termination.

In June 1997, Nicholas filed this lawsuit against the University and Evans. In his five-count Complaint, he alleged that the defendants' actions: (1) violated his rights under the due process clause of the Fourteenth Amendment and the free speech clause of the First Amendment; (2) violated these same rights and discriminated against Nicholas based on his age in violation of 42 U.S.C. S 1983; (3) violated the Pennsylvania whistleblower law, 43 P.S.A. S 1423; (4) constituted a breach of his tenure contract; and (5) violated ERISA.

The defendants moved for summary judgment, and the District Court dismissed Counts I and V of the Complaint, as well as Count II's S 1983 claims based on age discrimination and substantive due process. The case was bifurcated and the liability phase proceeded to jury trial. At the close of Nicholas's case, the District Court granted defendants' motion to dismiss Count III, alleging violation of the whistleblower law.

At the close of the liability phase, the jury returned a special verdict that read as follows:

> 1) Prior to Plaintiff 's termination, did Defendants fail to provide Plaintiff with oral or written notice of the charges against him and an opportunity to present his side of the story?
>
> Answer: No
>
> 2) After Plaintiff 's termination, did the University fail to provide Plaintiff with a fair hearing on the charges against him?

4

Answer: Yes

3) Was Plaintiff 's report on Dr. Evans' muscle biopsy procedures to the State Board of Medicine a substantial or motivating factor in Defendant's decision to terminate Plaintiff?

Answer: Yes

4) If Plaintiff had not filed a report on Dr. Evans with the State Board of Medicine, would Defendants' decision to terminate Plaintiff have been the same?

Answer: Yes

5) Did the University breach the terms of its tenure contract with Plaintiff by terminating him?

Answer: Yes

(App. 305-310.)

The defendants moved for judgment notwithstanding the verdict on questions 2 and 5. The District Court granted judgment as a matter of law in favor of the defendants on question 2, the post-termination procedural due process claim. The court also entered final judgment in favor of the University as to the First Amendment claim and in favor of Evans as to all claims. The remaining breach of contract claim against the University went to the jury for determination of damages.

Prior to the damages phase, the District Court granted the University's motion for discovery sanctions against Nicholas, precluding him from introducing evidence of future lost earnings. The court also excluded evidence related to punitive damages, detrimental reliance and compensatory damages beyond lost earnings and benefits. At the conclusion of the damages phase, the jury entered the following special verdict:

Question No. 1: Did Dr. Nicholas suffer any actual damages causally related to the University's breach of contract?

Answer: No.

. . . .

5

> Question No. 3: If your answer to Question No. 1 is "No" or "Evidence Equally Balanced," what amount of nominal damages do you award?
>
> Answer: $1,000.

(App. 614-17.) After further briefing, the District Court issued an order holding that: (1) Nicholas was entitled to severance pay in the amount of one year's salary; (2) the jury's award of nominal damages be reduced to $1.00; and (3) Nicholas was not entitled to specific performance as a remedy for breach of contract. Nicholas now appeals.

II.

The District Court exercised subject matter jurisdiction over this action pursuant to 28 U.S.C. SS 1331, 1343 and 1367. We have appellate jurisdiction over the final judgment of the District Court pursuant to 28 U.S.C. S 1291.

III.

Nicholas raises numerous arguments on appeal. The first five are substantive and allege that: (1) the District Court erred in dismissing the substantive due process claim; (2) the court erred in granting final judgment against him on the First Amendment claim; (3) the jury's verdict for defendants on the pre-termination procedural due process claim was not supported by the evidence; (4) the court erred in granting final judgment in favor of Evans on all counts; and (5) the jury charge on breach of contract was in error. Next, Nicholas raises three arguments relating to the damages phase: (6) the court erred in reducing Nicholas's nominal damage award; (7) the court erred in denying specific performance; and (8) the court erred in limiting Nicholas's damages to lost compensation. Finally, Nicholas raises three evidentiary and trial-related arguments: (9) the District Court improperly limited Nicholas's time for cross-examining Evans; (10) the court erred in excluding the testimony of William Becker on the subject of Evans's credibility; and (11) the court erred in granting the University's motion for discovery sanctions and

6

prohibiting Nicholas from presenting any evidence of future lost earnings. We will address these arguments in turn.

A.

Nicholas claims that defendants violated the substantive component of the Fourteenth Amendment's Due Process Clause by firing him for an arbitrary, irrational, or improper reason. The chief issue in the appeal concerns whether Nicholas's property interest in his tenured professorship was entitled to substantive due process protection. We hold that it was not, and accordingly affirm the District Court's dismissal of his substantive due process claim.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component. See, e.g., Planned Parenthood of S.E. Pennsylvania v. Casey, 505 U.S. 833, 846-47 (1992) ("it is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure") (quoting Whitney v. California, 274 U.S. 357, 373 (1927) (Brandeis, J., concurring)).

As this Court has previously observed, substantive due process "is an area of law `famous for controversy, and not known for its simplicity.' " DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir. 1995) (quoting Schaper v. City of Huntsville, 813 F.2d 709, 715 (5th Cir. 1987)). Part of this conceptual confusion may arise from the fact that the fabric of substantive due process, as woven by our courts, encompasses at least two very different threads. Before ruling on Nicholas's claim, then, we will attempt to untwist this tangled skein.

The first thread of substantive due process applies when a plaintiff challenges the validity of a legislative act.[1]
_____

1. It is crucial to keep in mind the distinction between legislative acts and non-legislative or executive acts. As we have previously explained,

Typically, a legislative act will withstand substantive due process challenge if the government "identifies a legitimate state interest that the legislature could rationally conclude was served by the statute," although legislative acts that burden certain "fundamental" rights may be subject to stricter scrutiny. Alexander v. Whitman, 114 F.3d 1392, 1403 (3d Cir. 1997) (quoting Sammon v. New Jersey Bd. of Med. Examiners, 66 F.3d 639, 645 (3d Cir. 1995)).

The second thread of substantive due process, as identified by this Court, protects against certain types of non-legislative state action. Of course, the Due Process Clause's primary protection against the arbitrary exercise of power by government officials is its requirement of fair procedures--that is, of procedural due process. This Court has nevertheless held that a non-legislative government deprivation "that comports with procedural due process may still give rise to a substantive due process claim `upon allegations that the government deliberately and arbitrarily abused its power.' " Independent Enters. Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 (3d Cir. 1997) (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 683 (3d Cir. 1991)); see also Boyanowski v. Capital Area Intermediate Unit, ___ F.3d ___, 2000 WL 768775, *3 (3d Cir. June 14, 2000) ("The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities."). Accordingly, we have held that a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive," Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000) (quoting Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir. 1988)), or by

_____

"[e]xecutive acts, such as employment decisions, typically apply to one person or to a limited number of persons, while legislative acts, generally
laws and broad executive regulations, apply to large segments of society." Homar v. Gilbert, 89 F.3d 1009, 1027 (3d Cir. 1996) (Alito, J., concurring in part and dissenting in part); see also McKinney v. Pate, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994).

means of government conduct so egregious that it"shocks the conscience," Boyanowski, 2000 WL 768775, at *4 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

To prevail on a non-legislative substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." Woodwind Estates, 205 F.3d at 123. The text of the Fourteenth Amendment speaks of "property" without qualification, and it is well-settled that state-created property interests, including some contract rights, are entitled to protection under the procedural component of the Due Process Clause. See Reich v. Beharry, 883 F.2d 239, 243 (3d Cir. 1989). However, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." Id. Rather, to state a substantive due process claim, "a plaintiff must have been deprived of a particular quality of property interest." DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir. 1995) (emphasis added).

On past occasion, we have lamented that "the case law of this circuit and the Supreme Court provides very little guidance as to what constitutes this `certain quality' of property interest worthy of protection under the substantive due process clause." Homar v. Gilbert, 89 F.3d 1009, 1021 (3d Cir. 1996), rev'd and remanded on other grounds, 520 U.S. 924 (1997). Nevertheless, we believe that a careful review of the case law does reveal one guiding principle: whether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather depends on whether that interest is "fundamental" under the United States Constitution. See Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J., concurring); Independent Enters. Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 n.12 (3d Cir. 1997); Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995); McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc); Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1351 (6th Cir. 1992); Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134, 1142

9

n.10 (4th Cir. 1990); Homar v. Gilbert, 63 F. Supp. 2d 559, 570–77 (M.D. Pa. 1999). Justice Powell explained this distinction in his Ewing concurrence:

> Even if one assumes the existence of a property right . . . not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution.
>
> The history of substantive due process "counsels caution and restraint." The determination that a substantive due process right exists is a judgment that " `certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.' " In the context of liberty interests, this Court has been careful to examine each asserted interest to determine whether it "merits" the protection of substantive due process. "Each new claim to [substantive due process] protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed."
>
> The interest asserted by respondent [in continued university enrollment] is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution. It certainly is not closely tied to "respect for the teachings of history, solid recognition of the basic values that underlie our society, and wise appreciation of the great roles that the doctrines of federalism and separation of powers have played in establishing and preserving American freedoms." For these reasons, briefly summarized, I do not think the fact that Michigan may have labeled this interest "property" entitles it to join those other, far more important interests that have heretofore been accorded the protection of substantive due process

Ewing, 474 U.S. at 229–30 (Powell, J., concurring) (citations omitted).

10

Following Justice Powell, this Circuit has adopted an approach to substantive due process that focuses on the nature of the property interest at stake. By way of illustration, we have so far limited non-legislative substantive due process review to cases involving real property ownership. See, e.g., DeBlasio , 53 F.3d at 600 ("[land] ownership is a property interest worthy of substantive due process protection"). As one court has aptly observed, this is unquestionably "a fundamental property interest dating back to the foundation of the American colonies." Homar, 63 F. Supp. 2d at 577. And, as we concluded in DeBlasio, "one would be hard-pressed to find a property interest more worthy of substantive due process protection than [land] ownership." 53 F.3d at 601.

Heedful of the Supreme Court's admonition that we should exercise "utmost care whenever we are asked to break new ground in this field," Collins v. City of Harker Heights, 503 U.S. 115, 124 (1992), we have been reluctant to extend substantive due process protection to other, less fundamental property interests. In Reich v. Beharry, for example, we held that a service contract with the state failed to merit substantive due process protection. See 883 F.2d at 245. Reich relied on this Court's previous decision in Ransom v. Marrazzo, 848 F.2d 398 (3d Cir. 1988), which held that a state-law entitlement to water and sewer services was not protected by the Due Process Clause's substantive component:

> Substantive due process refers to and protects federal rights. The provision of water and sewer services, whether by a municipality or by a private utility company, is not, however, a federally protected right. The legal fact that, once a municipality (or, for that matter, a private utility company) establishes a utility for its citizens, a citizen's expectation of receiving that service rises to the level of a property interest cognizable under the Due Process Clause, merely brings that expectation within the compass of the Fourteenth Amendment's procedural protection. . . . It does not transform that expectation into a substantive guarantee against the state in any circumstance.

Ransom, 848 F.2d at 411-12. As the Reich  court reasoned,

11

It is apparent that, in this circuit at least, not all property interests worthy of procedural due process protection are protected by the concept of substantive due process. Moreover, we know from Ransom specifically that, despite the importance of utility service to the maintenance of a minimally acceptable standard of living, an arbitrary and capricious termination of such service by a state actor does not give rise to a substantive due process claim.

We believe it follows a fortiori from the holding in Ransom that Reich's complaint fails to state a substantive due process claim. As we have noted, the only interest that Reich had at stake before Beharry was his interest in avoiding delay in the receipt of payment of a bill for professional services rendered. We can think of no basis for according substantive due process protection to this interest while denying it to those who have had their utility service terminated.

Reich, 883 F.3d at 244–45.

Other cases have made explicit the requirement that a property interest must be constitutionally "fundamental" in order to implicate substantive due process. In Mauriello v. University of Medicine & Dentistry of New Jersey, 781 F.2d 46 (3d Cir. 1986), this Court, citing Justice Powell's concurrence in Ewing, opined that a graduate student's interest in continued academic enrollment "bore`little resemblance to the fundamental interests that previously had been viewed as implicitly protected by the Constitution.' " Id. at 50 (quoting Ewing, 474 U.S. at 229 (Powell, J., concurring)).  And, in Independent Enterprises Inc. v. Pittsburgh Water & Sewer Authority, we held that a low bidder's entitlement to state contract "is not the sort of `fundamental' interest entitled to the protection of substantive due process." 103 F.3d at 1179. Distinguishing earlier cases containing "language indicating that substantive due process is violated whenever a governmental entity deliberately or arbitrarily abuses government power," the Independent Enterprises court explained that

all of the cases involved zoning decisions, building permits, or other governmental permission required for

12

> some intended use of land owned by the plaintiffs,
> matters which were recognized in DeBlasio as
> implicating the "fundamental" property interest in the
> ownership of land. Thus, in light of the court's explicit
> statement in DeBlasio that some "particular quality of
> property interest" must be infringed before substantive
> due process protection may be invoked, these cases
> cannot be understood as affording substantive due
> process protection from every arbitrary and irrational
> governmental act, but only for those that deprive the
> plaintiff of a fundamental property right "implicitly
> protected by the Constitution."

Independent Enters., 103 F.3d at 1179 n.12 (citations omitted) (emphasis added).

To summarize: when a plaintiff challenges the validity of a legislative act, substantive due process typically demands that the act be rationally related to some legitimate government purpose. In contrast, when a plaintiff challenges a non-legislative state action (such as an adverse employment decision), we must look, as a threshold matter, to whether the property interest being deprived is "fundamental" under the Constitution. If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used. If the interest is not "fundamental," however, the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process.

With this framework in mind, we turn to whether Nicholas's tenured public employment is a fundamental property interest entitled to substantive due process protection. We hold that it is not, and thereby join the great majority of courts of appeals that have addressed this issue. See Singleton v. Cecil, 176 F.3d 419, 425-26 (8th Cir. 1999) (en banc) ("a public employee's interest in continued employment with a governmental employer is not so `fundamental' as to be protected by substantive due process"); McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994) (en banc) ("employment rights are not `fundamental' rights created by the Constitution"); Sutton v. Cleveland Bd.

13

of Educ., 958 F.2d 1339, 1350 (6th Cir. 1992) ("plaintiffs' state-created right to tenured employment lacks substantive due process protection"); Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134, 1142 n.10 (4th Cir. 1990) (professor's interest in position in university department "is essentially a state law contract right, not a fundamental interest embodied in the Constitution"); see also Local 342, Long Island Public Serv. Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive due process protection."); Kauth v. Hartford Ins. Co. of Illinois, 852 F.2d 951, 958 (7th Cir. 1988) ("In cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest . . . the plaintiff has not stated a substantive due process claim."); Lum v. Jensen, 876 F.2d 1385, 1389 (9th Cir. 1989) (finding "no clearly established constitutional right to substantive due process protection of continued public employment" in Ninth Circuit as of 1984); but see Newman v. Massachusetts, 884 F.2d 19, 25 (1st Cir. 1989) ("school authorities who make an arbitrary and capricious decision significantly affecting a tenured teacher's employment status are liable for a substantive due process violation").

Nicholas's tenured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution. We agree with the analysis of the District Court in Homar v. Gilbert that "it cannot be reasonably maintained that public employment is a property interest that is deeply rooted in the Nation's history and traditions. Nor does public employment approach the interests " `implicit in the concept of ordered liberty" like personal choice in matters of marriage and family.' " 63 F. Supp. 2d at 576 (citation omitted); see also Collins, 503 U.S. at 128 ("state law, rather than the Federal Constitution, governs the substance of the employment relationship"). Accordingly, we view public employment as more closely analogous to those state-created property interests that this Court has previous deemed unworthy of substantive due process2 than to the venerable common-

_____

2. See Independent Enters., 103 F.3d at 1180 (low bidder's entitlement to a state construction contract); Reich, 883 F.2d at 243-44 (contractor's

14

law rights of real property ownership implicated in DeBlasio.

Our decision also comports with the Supreme Court's admonition that the federal judiciary should not become a general court of review for state employment decisions:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. . . . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

Bishop v. Wood, 426 U.S. 341, 359-60 (1976). Therefore, we will affirm the District Court's entry of judgment in favor of the defendants on Nicholas's substantive due process claim.3

B.

At trial, Nicholas argued that defendants fired him in retaliation for his statements to state authorities criticizing Evans's research methods, in violation of the First Amendment's guarantee of freedom of speech. On appeal,

_____

right to payment for services rendered to the state); Ransom, 848 F.2d at 411-12 (tenant's state law entitlement to sewer and water services); and Mauriello, 781 F.2d at 50 (graduate student's interest in continued studies at a state university).

3. Nicholas makes some effort to argue that his case should be treated differently from a "garden-variety" public employment claim because it implicates issues of academic freedom that touch upon the First Amendment. We are unconvinced. The Supreme Court has recognized an independent S 1983 action for retaliatory termination in violation of the First Amendment, see Mount Healthy Board of Education v. Doyle, 429 U.S. 274 (1977), and "claims governed by explicit constitutional text may not be grounded in substantive due process." Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir. 1998); see also Sabatini v. Reinstein, 76 F. Supp. 2d 597, 598-99 (E.D. Pa. 1999) (First Amendment claim does not implicate substantive due process).

15

Nicholas contends that the District Court erred when it entered final judgment against him on this First Amendment claim. The jury made three findings relevant to this question: first, that the University breached Nicholas's tenure contract; second, that Nicholas's report on Evans's muscle biopsy procedures was a "substantial or motivating factor" in the University's termination decision; and third, that the University's decision would have been the same even if Nicholas had not filed the muscle biopsy report. The District Court, applying the First Amendment analysis set forth in Mount Healthy Board of Education v. Doyle, 429 U.S. 274 (1977), held that, based on these special verdicts, Nicholas had failed to prevail on his First Amendment claim. We will affirm.

Mount Healthy sets out a burden-shifting framework for First Amendment retaliation claims under S 1983:

> In a First Amendment retaliation case, the plaintiff has the initial burden of showing that his constitutionally protected conduct was a "substantial" or "motivating factor" in the relevant decision. Once the plaintiff carries this burden, the burden shifts to the defendant to show "by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct."

Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) (quoting Mount Healthy, 429 U.S. at 287) (citations omitted). If the employer shows that it would have taken the same action even absent the protected conduct, this will "defeat plaintiff 's claim." Green v. Philadelphia Housing Auth., 105 F.3d 882, 885 (3d Cir. 1997). The Mount Healthy Court explained the rationale for this affirmative defense:

> A rule of causation which focuses solely on whether protected conduct played a part, "substantial" or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing. . . . The constitutional principle at stake is sufficiently vindicated if such employee is placed in no worse a position than if he had not engaged in the conduct.

16

Mount Healthy, 429 U.S. at 285. Here, based on the jury's special verdict, the District Court concluded that the University had established this affirmative defense and entered judgment in its favor on the First Amendment claim.

Nicholas raises two arguments. First, he claims that because the jury found that the University breached Nicholas's tenure contract, the District Court should have inferred that the termination was based solely on illegitimate reasons. We disagree. The jury's finding may reflect the factfinder's view that the University terminated Nicholas for some reason unrelated to Nicholas's speech activity (for example, for insubordination or failure to comply with Evans's requests) but that this reason did not constitute "adequate cause" under the terms of the tenure contract. Or it might reflect a determination that Nicholas's termination was justified, but that the University failed to observe its own rules regarding notice or severance pay. In either case, the reason for Nicholas's termination would not be pretextual or illegitimate, but would simply constitute breach of contract rather than a constitutional violation.

Nicholas counters, however, that the jury's special verdicts were at least ambiguous, and that the District Court erred in not submitting an instruction on pretext. In support of this claim, he cites St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993), which set forth the standard to be used in "dual motives" cases under Title VII. This argument misses the point. First Amendment retaliation cases are not governed by Title VII's burden-shifting analysis, but rather by Mount Healthy framework. In that case, the Supreme Court made it crystal clear that an employee may not recover in a dual-motives case if the employer shows that it would have taken the same action even absent the protected speech. As the Seventh Circuit has noted, Title VII concepts have no applicability in the First Amendment context:

> The district court's conclusion that when protected speech is a "motivating factor" what would have happened in the absence of that speech is "not germane to the question of liability" is . . . untenable. The district court may have confused the standards Mt.

17

> Healthy establishes for constitutional litigation with the
> standards in some other kinds of employment
> litigation. Whatever may be the case under labor and
> civil rights statutes, Mt. Healthy establishes the
> approach for litigation under the first amendment.

Goodan v. Neil, 17 F.3d 925, 928 (7th Cir. 1994) (citations omitted).  Because the jury found that the University had established its affirmative defense under Mount Healthy, we affirm the District Court's judgment for defendants on Nicholas's First Amendment claims.

C.

Nicholas next challenges the jury's finding against him on his pretermination procedural due process claim, claiming that it was not supported by the evidence. However, Nicholas never made a Rule 50 motion for judgment as a matter of law following the jury verdict. "Where a party has failed to move for j.n.o.v., we will not review the sufficiency of the evidence and direct a verdict for them." Charles Jaquin et Cie, Inc. v. Destileria Serralles, Inc.,  921 F.2d 467, 475 (3d Cir. 1990). Accordingly, we hold that Nicholas has waived this argument.

D.

Next, Nicholas contends that the District Court erred in granting final judgment in favor of defendant Evans on the breach of contract claim. We find no error here. Nicholas never alleges that he had any contractual relationship with Evans, and under Pennsylvania law, in the absence of such a relationship, Evans cannot be liable for breach of contract. See Bleday v. Oum Group, 645 A.2d 1358, 1363 (Pa. Super. 1994).

E.

Nicholas challenges the following portion of the District Court's jury instruction in the liability phase:

> When a employee asserts that an employer's policy
> creates a contractual term between an employer and

18

an employee, it is not sufficient to show merely that the employer had a policy. The employer must show that the employer offered the terms of the policy as binding terms of employment. Unless the employer communicates that policy as part of a definite offer of employment, the employer is free to change his policy such as events may require. Thus, an employer's voluntary adherence to guidelines or policies affecting the employment relationship does not give rise to enforceable contract rights on the employee. Some administrative provisions in the personnel policy manual did not rise to the level of agreement by which an employer must abide.

In order to provide an enforceable contract in which an employer grants a specific benefit to an employee, the employee must prove that the employer communicated an intentional offer with definite terms, that the employer intended to be bound by the offer, and that the employer made the offer to induce the employee to accept or continue employment with the company.

(App. 1534.) Nicholas characterizes this instruction as a "recitation of the employment at will doctrine," which he claims was inappropriate in a tenure case.

Contrary to Nicholas's assertions, the challenged charge does not address employment-at-will; rather, it sets out Pennsylvania law on what an employee must do in order to prove a disputed contractual term. As the University notes, such a charge was necessary because the parties, although agreeing that there was a tenure contract, disagreed on its terms. Moreover, the charge correctly stated Pennsylvania law:

It is not sufficient to show [the employer] had a policy. It must be shown they offered it as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require.

Morosetti v. Louisiana Land & Exploration Co. , 564 A.2d 151, 153 (Pa. 1989). Finally, even if the charge had been in

19

error, the error would clearly be harmless: the jury found in Nicholas's favor on his breach of contract claim.

F.

Nicholas raises three objections to the District Court's handling of damages. First, he argues that the court erred in reducing the jury's award of nominal damages from $1,000 to one dollar; second, he claims that he was entitled to reinstatement to his old position at Noll Lab; and third, he argues that he should have been permitted to argue for damages arising for his alleged mental depression and for punitive damages. We find no merit in any of these contentions, and will therefore affirm.

1.

In Stevenson v. Economy Bank of Ambridge, 197 A.2d 721 (Pa. 1964), the Pennsylvania Supreme Court held that because "the basic unit of American money is the dollar . . . in the future, when nominal damages are awarded in our courts, one dollar ($1) shall be the measure thereof." Id. at 728. The Third Circuit has also followed this rule. See Mayberry v. Robinson, 427 F. Supp. 297, 314 (M.D. Pa. 1977) ("It is clear that the rule of law in the Third Circuit is that nominal damages may not exceed $1.00.") (citing United States ex rel. Tyrrell v. Speaker, 535 F.2d 823, 830 (3d Cir. 1976)). Accordingly, the District Court did not err in reducing the jury's nominal damages award to one dollar.

2.

Nor did the District Court err in refusing to order reinstatement. The sole basis for the University's liability was contractual, and under Pennsylvania law, "a court of equity will not grant specific performance of a contract for personal services." McMenamin v. Philadelphia Transp. Co., 51 A.2d 702, 703 (Pa. 1947); see also Maritrans v. Pepper, Hamilton & Scheetz, 572 A.2d 737, 744 (Pa. Super. 1990), rev'd on other grounds, 602 A.2d 1277 (1992); Restatement (Second) of Contracts S 367(1) (1981) ("A promise to render

20

personal service will not be specifically enforced."). As the Restatement makes clear, this rule extends to employees seeking reinstatement in cases "where personal supervision is considered to be involved." Restatement (Second) of Contracts, S 367, cmt. b. Accordingly, Nicholas was not entitled to reinstatement as a remedy for the University's breach of contract.

3.

Finally, Nicholas claims that the District Court erred in precluding him from arguing for compensatory damages arising from his alleged mental depression and for punitive damages. At the outset of the damages phase, defendants made a motion in limine to exclude all evidence of punitive and compensatory damages except for lost compensation. The District Court granted the motion, and we will affirm.

Under Pennsylvania law, "[i]n an employment case, the measure of damages is the wages which were to be paid less any amount actually earned or which might have been earned through the exercise of reasonable diligence." Delliponti v. DeAngelis, 681 A.2d 1261, 1265 (Pa. 1996). In addition, Pennsylvania generally permits a plaintiff to recover consequential damages for breach of contract. See Cavaliere v. Duff 's Business Institute, 605 A.2d 397, 401 (Pa. Super. 1992).

The only consequential injury that Nicholas alleges, however, is that he was "depressed as a result of the . . . University's actions." Under Pennsylvania law, to recover for mental anguish in a breach of contract case, "plaintiffs must allege physical injury or physical impact." Kutner v. Eastern Airlines, Inc., 514 F. Supp. 553, 559 (E.D. Pa. 1981); see also Carpel v. Saget Studios, Inc. , 326 F. Supp. 1331, 1334 (E.D. Pa. 1971) ("The mental suffering alleged by plaintiffs does not constitute a proper element of damages under Pennsylvania law."); Rittenhouse Regency Affiliates v. Passen, 482 A.2d 1042, 1043 (Pa. Super. 1984) ("damages for emotional distress are not ordinarily allowed in actions for breach of contract"); Gefter v. Rosenthal, 119 A.2d 250 (Pa. 1956). Nicholas has not done so. Because Nicholas's alleged depression was not compensable under

21

Pennsylvania law, the District Court did not abuse its discretion in excluding this evidence.

Moreover, under Pennsylvania law, "punitive damages are not recoverable in an action solely based upon breach of contract." Johnson v. Hyundai Motor America , 698 A.2d 631, 639 (Pa. Super. 1997). By the time this case reached the damages phase, Nicholas's sole remaining claim was for breach of contract; as a result, the District Court was correct to exclude evidence relating to punitive damages.

G.

We finally turn to Nicholas's evidentiary and procedural objections.

1.

At the beginning of the trial on liability (in late April), the District Judge informed the parties that he hoped to be able to put the case to the jury by May 1 because he would be presiding over a capital murder trial in early May. (Supp. App. G.) Accordingly, the court, with the consent of the parties, decided to place time limits on the questioning of witnesses. After the defense's direct examination of Evans (which took approximately 132 minutes), the judge asked Nicholas's counsel how long he would require for cross-examination. Counsel responded that he would need 75 minutes; the District Court allowed him 90 minutes. Nicholas now argues that this time limit was inappropriate.

If there was any error here, Nicholas has waived his right to object to it. Nicholas's counsel never objected at trial to the District Court's time limits, and indeed agreed to the 90-minute time frame for Evans's cross-examination. Accordingly, we will not disturb the District Court's judgment on this ground.

2.

Nicholas attempted to call Dr. William Becker as a rebuttal witness to testify about certain events reflecting on the credibility and truthfulness of Evans. Specifically,

22

Nicholas sought to have Becker testify that Evans had previously submitted inaccurate information in a grant report to the United States government. The District Court excluded this testimony pursuant to Federal Rule of Evidence 608(b). We review this evidentiary ruling for abuse of discretion, and will affirm.

Under Rule 608(b), "specific instances of the conduct of a witness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence." Fed. R. Evid. 608(b). "Extrinsic evidence is evidence offered through other witnesses, rather than through cross-examination of the witness himself or herself. This court has construed Rule 608(b) as requiring the exclusion of extrinsic impeachment evidence concerning a witness's prior instances of conduct." United States v. McNeil, 887 F.2d 448, 453 (3d Cir. 1989). Although Nicholas had the right to cross-examine Evans himself on relevant past incidents of untruthfulness, the District Court properly prohibited him from proving this collateral matter by extrinsic evidence.

3.

After the liability phase of the trial, defendants moved for discovery sanctions against Nicholas (or, in the alternative, for reopening of discovery) based on his failure to disclose the details of his post-termination employment. Specifically, Nicholas failed to reveal that Centre Emergency Medical Associates (CEMA), where he worked as a part-time emergency room doctor, had informed him that it planned to eliminate his position. The District Court granted the motion for sanctions and precluded Nicholas from introducing any evidence of future lost earnings at the damages phase. We review an order imposing discovery sanctions for abuse of discretion, see Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997), and will affirm.

Here, the District Court based its ruling on Federal Rule of Civil Procedure 26(e), which provides that a party is "under a duty to supplement or correct the disclosure or response to include information thereafter required if . . . the party learns that in some material respect the

23

information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Furthermore, under Federal Rule of Civil Procedure 37(c)(1), when "a party without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) [that party] shall not, unless such failure is harmless, be permitted to use as evidence at trial .. . any witness or information not so disclosed." In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, we must consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation. See Konstantopoulos, 112 F.3d at 719.

Here, the District Court found that Nicholas knew as early as November 1997 that his position at CEMA would be eliminated, and that this information made his previous disclosure of continuing employment with CEMA materially inaccurate. The court further found that Nicholas, without justification, failed to disclose this new development to defendants until May 21, 1998, and did not provide them with the relevant documents until June 19, 1998--just one month before the beginning of the damages phase trial. (App. 595-96.) The court noted that this delay substantially prejudiced the defendants:

> For example, if Nicholas seeks damages for future lost wages because he is no longer employed by Centre Emergency Medical Associates, the Defendants aver that they will have to develop additional rebuttal evidence as to the causes of Nicholas's termination by Centre Emergency Medical Associates, the availability of other positions to Nicholas, Nicholas's reasonable attempts to mitigate his future damages and prepare witness testimony including possible expert witness testimony.

24

(App. 596.) Moreover, the court found that permitting the evidence would likely require a lengthy stay and disrupt the orderly conclusion of the trial, which was already in progress. Nicholas provides no coherent legal or factual argument controverting these findings. Consequently, we hold that the District Court did not abuse its discretion in imposing discovery sanctions.

IV.

In sum, we find no merit in any of Nicholas's allegations of error. Accordingly, the judgment of the District Court is affirmed.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

25