

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-16-2003

# Gikas v. Washington Sch Dist

Precedential or Non-Precedential: Precedential

Docket 02-1934

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Gikas v. Washington Sch Dist" (2003). *2003 Decisions.* Paper 505.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/505

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 16, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1934

JAMES GIKAS,
Appellant

v.

WASHINGTON SCHOOL DISTRICT,
WASHINGTON BOARD OF SCHOOL DIRECTORS,
DR. MARYANN B. WEINSTEIN, DONALD G. EMERY,
DR. JAMES S. BALENT, ALAN B. COTTRILL,
JANE S. FERGUS, DAVID R. JOHNSTON,
JONATHAN W. MILES, PHYLLIS L. WALLER, and
ED WESTCOTT, individually

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 00-cv-00890)
Judge: Honorable Robert J. Cindrich

Argued: February 25, 2003

Before: BECKER, *Chief Judge*,* Scirica, *Circuit Judge*,**
and Shadur,*** *District Judge*

_____

* Judge Becker completed his term as Chief Judge on May 4, 2003.

** Judge Scirica succeeded to the position of Chief Judge on May 4, 2003.

*** Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

(Filed: May 16, 2003)

DANIEL W. ERNSBERGER
 (ARGUED)
Behrend & Ernsberger
306 Fourth Avenue
Suite 300
Pittsburgh, PA 15222

*Counsel for Appellant*

DOUGLAS R. NOLIN (ARGUED)
Peacock Keller Ecker & Crothers,
 LLP
70 East Beau Street
Washington, PA 15301

*Counsel for Appellees*

## OPINION OF THE COURT

BECKER, *Circuit Judge*:

This appeal concerns the property rights created by the Pennsylvania Veterans' Preference Act ("VPA"), 51 Pa. C.S.A. § 7104. Section 7104(a) of the VPA provides that a veteran possessing the "requisite qualifications" shall be given a preference in the assignment of public jobs. After working as a substitute teacher in the Washington School District, plaintiff James Gikas, who had received an honorable discharge from both the Army and the Navy, sought full-time employment in the District as a social studies teacher. On two occasions, non-veterans were hired into the District's social studies department instead of Gikas, who would have qualified for a preference over the non-veteran applicants if it were shown that he possessed the "requisite qualifications." Gikas asserts that the District violated his substantive due process rights by denying him the preference and by not hiring him when a position became available in the social studies department in 1999.

Gikas also claims that his procedural due process rights were violated because the District failed to define the

"requisite qualifications" for the positions and to publish those requirements so that applicant veterans would know what was required in advance of applying for the positions. By not defining in advance the "requisite qualifications," Gikas maintains, the District had free rein to ignore the veterans' preference. In his submission, the District could define "requisite qualifications" post hoc as those of the most qualified applicant so that a veteran would be employed only if he was the most qualified, essentially eviscerating any preference. Gikas argues that § 7104(a) was meant to be a counterpart to § 7104(b) of the VPA, which creates a preference in the assignment of public jobs when a civil service exam is administered; if an applicant veteran passes the civil service exam, he is entitled to the position even if "his name does not stand highest on the eligible or promotional list." 51 Pa. C.S.A. § 7104(b). Thus, Gikas argues that the District must provide in advance of the hiring process an objective definition of "requisite qualifications" to ensure that applicant veterans are actually given the preference to which they are entitled under the Act.

The District Court dismissed the procedural due process claim because Gikas had "fail[ed] to state a claim upon which relief can be granted," and granted the defendants' motion for summary judgment on the substantive due process claim because "there [was] no genuine issue as to any material fact and" the defendants were "entitled to a judgment as a matter of law." Fed. R.Civ. P. 12(b)(6); Fed R.Civ. P. 56(c). We too conclude that Gikas has alleged neither a substantive nor a procedural due process violation. While the veterans' preference contained in § 7104(a) is a property interest subject to procedural due process protection, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989). Rather, a property interest must be "fundamental" under the United States Constitution to be subject to substantive due process protection. In our view, the preference contained in § 7104(a) is not sufficiently "fundamental" to qualify as a property interest deserving substantive due process protection.

Moreover, we conclude that procedural due process does not require the District to publish the definition of "requisite qualifications" for a position in advance of the hiring process. The property interest at issue here is not in the teaching position itself, but in the preference. As such, the District is not required to help applicant veterans become qualified for the job; rather it is required to give those applicants a preference only if they are independently qualified. Requiring the publication in advance of the "requisite qualifications" for a position is simply too attenuated from the specific protected property interest in the preference to be required by procedural due process. In sum, Gikas has not established a federal constitutional violation, hence we are constrained to affirm the judgment of the District Court.

## I.

In 1997, James Gikas, a veteran of both the Army and the Navy who is certified to teach school in Pennsylvania, applied for a teaching position in the Washington School District and was hired as a part-time substitute teacher. In June 1998, a full-time teaching position became available in the social studies department and the District hired Cyril Walther, a non-veteran substitute teacher who had served an entire year in the position to be filled, teaching the same material required for the position. When Gikas asked why he was passed over for the position, he was told that he did not have enough experience as a full-time substitute teacher. Gikas objected because he had not been informed that working full time (as opposed to part time) as a substitute teacher would affect his ability to be hired as a full-time teacher. The school board represented that it would inform Gikas of future openings in his area of certification and would delineate the minimum qualifications for such openings.

In the summer of 1999, another full-time teaching position became available in the District's social studies department. William Watson, the District's high school principal, and Ronald Junko, the District's assistant high school principal, chose eight candidates, including Gikas, to interview for the position based on the following criteria:

(1) the appearance of the application; (2) extracurricular activities; (3) grade point average; and (4) proximity of his or her residence. During the interview, Watson and Junko evaluated the applicants based on four general criteria; those criteria were further divided into subsets. The criteria were:

(1) Instruction

    (A) Teaching Techniques/ Learning

    (B) Planning

    (C) Managing Students

    (D) Motivating Students

(2) Professional Development and Fit with Needs

    (A) Preparation

    (B) Experience

    (C) Professional Growth/ Responsibility

    (D) Philosophy/ Goals

    (E) Coaching/ Sponsoring

(3) Relationships

    (A) Staff

    (B) Parents/ Community

(4) Other

    (A) Standard District Measure.

The applicants were given a score in each area based on their answers to a standardized series of questions.

Based on this score, Gikas ranked sixth out of the eight candidates, and he was not offered the teaching position. Watson testified that Gikas provided only generic responses to questions related to teaching techniques, planning, managing and motivating students, and that he did not demonstrate an understanding of the District's demographics or philosophies. A non-veteran, Mark Albertina, who scored the highest in the interview evaluation, was hired.

Gikas brought suit, pursuant to 42 U.S.C. § 1983, in the District Court for the Western District of Pennsylvania against the Washington School District, the Washington Board of School Directors and nine members of the Washington School Board individually, seeking appointment to a teaching position with the District, with back pay and benefits, based on alleged substantive and procedural due process violations.[1] Pursuant to the Magistrates Act, 28 U.S.C. § 636(b)(1), and the Local Rules for Magistrates, this case was heard before Magistrate Judge Francis X. Caiazza. The Magistrate Judge issued a Report and Recommendation proposing the dismissal of the procedural due process claim, pursuant to Fed. R.Civ. P. 12(b)(6), which the District Court adopted. The Magistrate Judge later filed a Report and Recommendation suggesting that the District Court grant the defendants' motion for summary judgment on the substantive due process claim. The District Court issued an order adopting the recommendations of the Magistrate Judge. Gikas timely appealed.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over both the order dismissing the procedural due process claim and the order granting the defendants' motion for summary judgment. *See United States v. Occidental Chemical Corp.*, 200 F.3d 143, 147 (3d Cir. 1999) ("We exercise plenary review of a grant of a motion to dismiss, accepting all allegations in the Complaint as true and drawing all reasonable inferences in the light most favorable to the plaintiff."); *Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir. 1999) ("We exercise plenary review over a grant of summary judgment and apply the same legal standard used by the District Court.").

---

1. Gikas brought suit against the following individuals: Dr. Maryann B. Weinstein, Donald G. Emery, Dr. James S. Balent, Alan B. Cottril, Jane S. Fergus, David R. Johnson, Jonathan W. Miles, Phillis L. Walker, and Ed Wescott.

## II.

Gikas argues that the District deprived him of a property interest protected by substantive due process when it hired Albertina, a non-veteran, to fill the full-time teaching position in the social studies department. In particular, Gikas maintains that because he was one of eight individuals selected to be interviewed for the position, he met the "requisite qualifications" for the job, and as a result, he was entitled to a preference under § 7104(a) of the Pennsylvania Veterans' Preference Act.[2] Section 7104 of the VPA provides:

> (a) Non-civil service. Whenever any soldier *possesses the requisite qualifications* and is eligible to appointment to or promotion in a public position, where no such civil service examination is required, the appointing power in making an appointment or promotion to a public position shall give preference to such soldier.

> (b) Name on civil service list. Whenever any soldier possesses the requisite qualifications, and his name appears on any eligible or promotional list, certified or furnished as the result of any such civil service examination, the appointing or promoting power in

---

2. Gikas also maintains that he was denied the preference simply because he did not supply the District with a Form DD214 documenting his veteran status. He bases this on a 1999 letter from the District's solicitor which states that "in reviewing [Gikas'] file, I note that the School District has not been provided, by Mr. Gikas, with a DD214 form . . . . Public school districts in Pennsylvania are not required to view an individual as a "soldier" for purposes of the Veterans' Preference Act unless and until that individual provides the School District with a DD214. . . . Consequently, we ask that you provide to us copies of the DD214s issued to Mr. Gikas." This is not sufficient to show that Gikas was denied the preference because he did not provide this form. It simply demonstrates that before litigating the issue, the District wanted to make sure that Gikas was actually a veteran, as defined by the VPA. Rather, it appears that Gikas was not hired because the District concluded, from his responses during the interview process, that he did not possess the "requisite qualifications" for the position, and that as such, he was not entitled to the preference even if he had supplied the District with the Form DD214.

making an appointment or promotion to a public position shall give preference to such soldier, notwithstanding, that his name does not stand highest on the eligible or promotional list. 51 Pa. C.S.A. § 7104 (emphasis added).[3]

Pursuant to our caselaw, " 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.' " *Nicholas, M.D. v. Pa. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000) (quoting *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)). Gikas maintains that the veterans' preference in § 7104(a) is a property right which entitles him to substantive due process protection. This contention is based primarily on our decision in *Carter v. City of Philadelphia*, 989 F.2d 117, 122 (3d Cir. 1993), in which we stated that "§ 7104(b) of the Veterans' Preference Act confers a constitutionally protected property right upon [the plaintiff]." Gikas argues that § 7104(a) of the VPA creates essentially the same property interest as § 7104(b), establishing the same preference where there is no civil service exam, and that we must therefore conclude that § 7104(a) creates a property interest protected by substantive due process.

Gikas misunderstands the import of *Carter*. Although *Carter* holds that § 7104(b) creates a property interest which cannot be deprived without due process of law, the *Carter* opinion refers specifically to *procedural* due process protection and not substantive due process protection. Although this is not explicitly stated in the opinion, it is self-evident because the *Carter* panel cited to *Boards of Regents v. Roth*, 408 U.S. 564 (1972), for the proposition that a state-created property interest deserves constitutional protection if the plaintiff has a legitimate claim of entitlement, and not simply an expectation of the benefit. 989 F.2d at 120. *Roth* and this line of analysis refer specifically to the creation of a property interest subject to

---

3. The Pennsylvania Supreme Court has found the VPA unconstitutional as to promotions. *See Hoffman v. Township of Whitehall*, 677 A.2d 1200, 1203 (Pa. 1996).

procedural due process protection, *see* discussion *infra*. The *Carter* panel went on to conclude that the veterans' preference in § 7104(b) created such an entitlement. *Id.* at 122.

In *Nicholas, M.D. v. Pennsylvania State University*, *supra*, we explained that a property interest protected by procedural due process is not necessarily protected by substantive due process:

> On past occasion, we have lamented that "the case law of this circuit and the Supreme Court provides very little guidance as to what constitutes this 'certain quality' of property interest worthy of protection under the substantive due process clause." Nevertheless, we believe that a careful review of the case law does reveal one guiding principle: whether a certain property interest embodies this "particular quality" is not determined by reference to state law, but rather *depends on whether that interest is "fundamental" under the United States Constitution*. . . . [T]his Circuit has adopted an approach to substantive due process that focuses on the nature of the property interest at stake. By way of illustration, we have so far limited non-legislative substantive due process review to cases involving real property ownership . . . we have been reluctant to extend substantive due process protection to other, less fundamental property interests. 227 F.3d at 140-141 (emphasis added) (internal citations omitted).

The *Nicholas* panel also cited favorably Justice Powell's concurrence in *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985), in which the majority assumed the existence of a substantive due process property interest in the university's decision to dismiss the plaintiff from a program of study, although it eventually concluded that the there was no violation since the decision to dismiss the plaintiff was not arbitrary or capricious. Justice Powell noted:

> Although I join in the Court's opinion holding that respondent presents no violation of the substantive due process right that he asserts, I think it unnecessary to

assume the existence of such a right on the facts of this case. . . . Even if one assumes the existence of a property right . . . not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution. . . . The interest asserted by respondent [in continued university enrollment] is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution. *Ewing*, 474 U.S. at 228-230 (Powell, J. concurring) (internal citations omitted).

Using this analysis, the *Nicholas* panel held that a university professor's tenured public employment was not a fundamental property interest entitled to substantive due process protection. *See Nicholas*, 227 F.3d at 143 ("[The plaintiff's] tenured public employment is a wholly state-created contract right . . . . [W]e view public employment as more closely analogous to those state-created property interests that this Court has previously deemed unworthy of substantive due process than to the venerable common-law rights of real property ownership. . . . [T]he federal judiciary should not become a general court of review for state employment decisions.") (internal citations omitted).

The property interest at issue in this case, which Gikas alleges entitles him to substantive due process protection, is not even a state-created employment interest. Rather, the property interest here is in an employment *preference*, not in the employment itself. At all events, the property interest in the preference appears to be no more fundamental under the federal Constitution than the employment interest in *Nicholas*. The interest in the preference is solely based upon state law. Thus, having no reason to believe that Gikas' interest in the veterans' preference is a fundamental right created by the federal Constitution, we conclude that § 7104(a) of the VPA does not create a property interest protected by substantive due process. Failing to meet this threshold requirement, we do not need to determine whether Gikas was deprived of his right to the preference when he was not hired for the teaching position.

## III.

Gikas argues that he was deprived of procedural due process when the District failed to notify him of the meaning of "requisite qualifications" so that he could make himself a better applicant for the teaching positions that became available in 1998 and 1999. Gikas also maintains that applicant veterans have no way of knowing whether they are entitled to the veterans' preference if the District is not required to publish the "requisite qualifications" for the position in advance of hiring. The practical result of not publishing the "requisite qualifications" in advance of hiring, the argument continues, is to eliminate the veterans' preference under § 7104(a): if the District does not have to set forth the meaning of "requisite qualifications," it can simply hire the most qualified applicant and later assert that the applicant veterans were not qualified to perform the job.

Gikas relies on Justice Zappala's concurrence in *Brickhouse v. Spring-Ford Area School District*, stating that for the veterans' preference under § 7104(a) "to be meaningful . . . it is necessary that [the] criteria be clearly spelled out in advance of the selection process, and not merely be subjective conclusions, formed ad hoc during or after the selection process, based on the relative credentials of the actual applicants." 656 A.2d 483, 488 (Pa. 1995) (Zappala, J., concurring). Under § 7104(b) of the VPA, any veteran who passes the civil service exam is entitled to the hiring preference even if "his name does not stand highest on the eligible . . . list." 51 Pa. C.S.A. § 7104(b). Gikas asserts that if the § 7104(a) preference is not construed similarly to ensure that the veteran does not have to be the *most* qualified applicant to be entitled to the job (rather the veteran must only be qualified to perform the job), the preference is rendered illusory.

In order to determine whether the District deprived Gikas of a property interest without following the procedures required by due process, we engage in a familiar "two-stage" analysis. We first determine whether Gikas has alleged a property interest protected by procedural due process. "[W]e then must decide what procedures constitute 'due process of law.'" *Robb v. City of Phila.*, 733 F.2d 286,

292 (3d Cir. 1984) (citing *Roth*, 408 U.S. at 569-72, and *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In *Carter*, we concluded that § 7104(b) of the VPA created an entitlement that was protected by procedural due process because "[t]he plain meaning of the statute, in unequivocal terms, grants a preference to veterans in promotion. . . . Because the clear language of § 7104(b) is controlling, we need not review its legislative history or caselaw on this issue." 989 F.2d at 122.

The District seeks to differentiate § 7104(a) from our holding concerning § 7104(b) in *Carter*, arguing that because the definition of "requisite qualifications" is subjective under § 7104(a), the preference therein is no more than an expectation of a benefit, and not a legitimate entitlement like the preference in § 7104(b).[4] We are unpersuaded by this reasoning, since like § 7104(b), § 7104(a) unequivocally states that if a soldier meets the "requisite qualifications," the public entity "shall give preference to such soldier." 51 Pa. C.S. § 7104(a). Although it is more difficult to determine whether an applicant veteran qualifies for the preference under § 7104(a), that veteran, if qualified, is no less entitled to the preference in § 7104(a) than he would be to the preference in § 7104(b). Thus, because we conclude that § 7104(a) creates a legitimate entitlement to the preference, we hold that § 7104(a) creates a property interest for the purposes of procedural due process.

But even though § 7104(a) creates a property interest for procedural due process purposes, we must now determine what process is due. Due process requires that a deprivation of a property interest "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532,

---

4. As noted above, the state can create a property interest that will be protected by procedural due process, so long as the plaintiff has a legitimate claim of entitlement to the benefit, and not a mere expectation. *See Robb*, 733 F.2d at 292 ("Property interests are not generally created by the Constitution. 'Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'") (quoting *Roth*, 408 U.S. at 577).

542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S 306, 313 (1950)); *see also Witkowski v. Welch*, 173 F.3d 192, 205 (3d Cir. 1999) (holding that the procedures required by due process are defined by federal law). In the employment context, notice and an opportunity to be heard generally refer to having "some kind of a hearing" before being discharged.[5] *Loudermill*, 470 U.S. at 542; *see also Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). In the case at bar, Gikas argues that due process requires that he be given notice of the "requisite qualifications" before he can be deprived of the preference, but he has not cited to any case holding that due process requires that applicants be notified of hiring criteria. We will nonetheless consider whether Gikas has been deprived of a protected property interest without due process of law by not being informed of the "requisite qualifications" for the teaching positions in 1998 and 1999.

While we are sympathetic to Gikas' situation, we conclude that procedural due process does not require the District to publish the "requisite qualifications" in advance of hiring.[6] Our primary concern is that the procedure that

---

5. Gikas is not arguing here that he was denied a hearing in connection with the District's decision to not hire him. Pennsylvania school districts and their governing boards are "local agencies," governed by and subject to Pennsylvania local agency law and procedure. *Monaghan v. Bd. of Sch. Dirs.*, 618 A.2d 1239, 1241(Pa. Commw. Ct. 1992); 2 Pa. C.S.A. §§ 101, 105, 551-555, 751-754 (1995). Hiring decisions of a school board are final decisions falling within the local agency law's procedural requirements and judicial review. Those decisions are appealable to the Pennsylvania Courts of Common Pleas. 2 Pa. C.S.A. § 752 (1995). The record indicates that Gikas did not appeal the District's hiring decision and he has not alleged that those procedures are inadequate. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.").

6. We do note, however, that the criteria used by the District to determine whether Gikas possessed the "requisite qualifications," *i.e.* teaching techniques, planning, motivating students, *etc.*, appear to be basic indicators of whether an applicant would be a good teacher; if so, Gikas should have anticipated that the District would use these, or similar, criteria.

Gikas desires (publication of the definition of "requisite qualifications" in advance of hiring) does not track the property interest of which he alleges he was deprived: the hiring *preference*. We emphasize that Gikas does not have a property interest in the teaching position itself, but in the veterans' preference, which comes into play only if he has the "requisite qualifications" for the job. *See Carter*, 989 F.2d at 122 ("We caution here that [the plaintiff's] interest is *not* in the promotion per se but in being given a preference when his promotion is considered.") (emphasis in original).

In sum, the property interest in the preference does not require that an applicant veteran be informed of the meaning of "requisite qualifications." Gikas has a property interest only after he has demonstrated that he has met the "requisite qualifications"; the VPA does not create a property interest in helping the veteran achieve those requirements. In other words, the District is not required by due process to give applicant veterans notice of the "requisite requirements" in advance of hiring because the veteran does not have a property interest at that time. The purpose of § 7104(a) is not to place veterans in a better position than other applicants simply because they are veterans; to be entitled to the preference, the applicant veteran must be independently qualified. *See Brickhouse*, 656 A.2d at 486 ("[V]eterans are not to be preferred in the assignment of public jobs merely on the strength of being veterans. They must be, in some sense, "qualified."). The procedure that Gikas advocates, requiring the District to delineate the "requisite qualifications" of a position before the hiring process begins, is simply too far removed from the constitutionally protected property interest in the preference, which is only a protected property interest once the applicant veteran has met the "requisite qualifications."[7]

---

7. Moreover, we note that allowing the District to draft the requirements for a teaching position on a case-by-case basis also serves a legitimate function, even though the result of that function may be to reduce the impact of the veterans' preference. The "requisite qualifications" to teach at the level of skill demanded by the employer will vary greatly depending on the subject area, class size, and grade level. As such, it would appear to be quite burdensome to require a school district to set forth in advance the "requisite qualifications" for each different teaching position that becomes available.

The judgment of the District Court will be affirmed.[8]

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

8. The District also argued that five of the individuals named as defendants by Gikas were not liable because they were not members of the school board at the time the alleged violations took place. There is no need to address this issue since we are affirming the District Court on other grounds.