**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4001
_____

KAREN KIMBLETON,
                                        Appellant

v.

VINCENT WHITE, in his individual and official capacity;
LAYTON WARD, in his individual and official capacity;
BUD MOWDAY, in his individual and official capacity;
DELAWARE REAL ESTATE COMMISSION
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-12-cv-00974)
District Judge: Honorable Gregory M. Sleet
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 21, 2015

BEFORE: FISHER, CHAGARES and COWEN, <u>Circuit Judges</u>

(Filed: April 30, 2015)
_____

OPINION[*]
_____

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

COWEN, Circuit Judge.

The plaintiff-appellant, Karen Kimbleton, appeals the District Court's order granting a motion for summary judgment filed by defendants Vincent White and Layton Ward ("Appellees"). We will affirm.

**I.**

Because we write solely for the parties, we will only set forth the facts necessary to inform our analysis. Kimbleton was a licensed real estate agent and broker in Delaware who owned a Re/Max franchise. Between 2008 and 2009, three separate individuals filed complaints against her with the Delaware Department of State, Division of Professional Regulation ("DPR"). Following an investigation by Ward, the Delaware Department of Justice ("DOJ") consolidated the complaints and filed its single amended complaint with the Delaware Real Estate Commission (the "Commission"). The Commission subsequently held a hearing at which White, as Chairman, presided. Kimbleton was found guilty and her brokerage license was suspended for six months. Although the Commission permitted her to continue practicing as an agent, she needed a broker to complete real estate transactions. Kimbleton appealed this decision to the Delaware Superior Court and sent multiple emails and letters to various public officials criticizing the Commission and alleging that she was the victim of sex and age discrimination.

During Kimbleton's six-month suspension, while her appeal of the first complaint was pending, the DPR received additional complaints from the public regarding her practice. Kimbleton was accused of continuing to hold herself out as a broker during a

2

settlement, in violation of her suspension. These complaints were again investigated by Ward and forwarded to the DOJ for possible prosecution. Again, the DOJ filed a complaint seeking discipline with the Commission. Faced with the threat of a possible five-year suspension if found guilty, Kimbleton entered into a consent agreement with the DOJ. In so doing, she agreed to an additional suspension of nine months, at the end of which, she was entitled to reapply for her salespersons' license. She also agreed to voluntarily withdraw with prejudice her pending appeal of the Commission's prior punishment.

During Kimbleton's extended suspension, White received from an anonymous source a printed map with advertisements indicating that Kimbleton continued to hold herself out as a broker. As a result, he filed a complaint with the DPR for further investigation. Ward again conducted the investigation, which included a visit by Ward to Kimbleton's office. There, he found a stack of phone books with advertisements listing Kimbleton as a broker. As a result of the investigation, the DOJ brought new charges against Kimbleton, although that complaint was ultimately dismissed.

Kimbleton filed suit in federal district court, alleging, *inter alia*, that the investigations by Ward and the penalties to which she was subjected by White and the Commission violated her First Amendment and Fourteenth Amendment rights. The District Court granted summary judgment to the defendants as to these claims, and the current appeal followed.[1]

_____

[1] The District Court also granted summary judgment as to all claims against Bud Mowday

## II.

The First Amendment Claim Against White

Kimbleton alleges that White filed a complaint against her with the DPR in retaliation for the letters she wrote to public officials criticizing him and accusing him of alleged misconduct regarding her first disciplinary hearing. To establish retaliation under the First Amendment, Kimbleton must demonstrate: (1) that she engaged in protected activity, (2) that she was subjected to adverse actions by a state actor, and (3) that her protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The District Court focused its analysis on the third prong and we will do the same.

Because the record contained indications that a state senator had notified individuals at the DPR that he received Kimbleton's letters, the District Court assumed, for purposes of summary judgment, that White had knowledge of Kimbleton's complaints. We express some doubt as to whether such inference was required given that there was no evidence that White actually had knowledge of the letters. In fact, he denied having any such knowledge. Nonetheless, we will follow the District Court's lead in this regard.

However, Kimbleton has failed to establish that White's decision to file a complaint was in any way related to the letters she wrote criticizing him. In the first place, as the District Court noted, White filed the complaint in November of 2011, over a

and the Commission, as well as claims against White and Ward in their official capacities.

4

year after Kimbleton wrote the letters in October of 2010. Moreover, White testified that he filed the complaint because he had received anonymous information that Kimbleton was continuing to hold herself out as a broker in violation of her consent agreement. Kimbleton does not dispute that White, did, in fact, receive information from an anonymous third party and there is no indication that his testimony is false. Rather, Kimbleton faults White for failing to determine the accuracy of the information before filing the complaint. This is, quite simply, insufficient to sustain her claim. Kimbleton's bald speculation regarding White's motives cannot overcome the evidence in the record that White's decision to file the complaint was prompted by information he received from a third party, and not in retaliation for letters Kimbleton had written over a year before he filed the complaint. *See Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (the party opposing summary judgment must present more than just "mere allegations, general denials, or . . . vague statements" to show the existence of a genuine issue of material fact).

The Fourteenth Amendment Claim Against Ward and White

Kimbleton also states that she sufficiently demonstrated a violation of her substantive due process rights under the Fourteenth Amendment. To establish such a claim, she must prove that she was deprived of a protected interest by government actions that were either "arbitrary, irrational, or tainted by improper motive," or by means so

---

The dismissal of these claims, which Kimbleton has declined to appeal, is not before us.

egregious that it "shocks the conscience." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). Kimbleton has not met this standard.

The District Court concluded that Kimbleton's claim against Ward fails because (1) Ward was simply investigating complaints made to the DPR by third parties, and (2) it was the DOJ that proceeded with the REC hearing once the complaint was made. It further concluded that her claim as to White fails because she made no showing of how filing a "bogus complaint," if true, violated her substantive due process rights. We consider these in turn.

As an initial matter, Kimbleton incorrectly asserts that the Commission was prohibited from disciplining her because none of the complaints filed were verified. The Delaware statute on which she relies states that "The Commission may, upon its own motion, and shall upon the verified complaint in writing of any person . . . direct all complaints to the investigative staff of the [DPR]." 24 Del. Code tit. 24, § 2912(a) (amended 2012). Thus, although in certain cases involving a verified complaint, the Commission was *required* to investigate, there is nothing in the statute that prevents the Commission from investigating or punishing conduct found to violate the statute, regardless of whether the complaint setting forth the allegations of misconduct was verified or not.[2]

_____

[2] This regulation remained in effect until February 3, 2012, and therefore governs all of the complaints filed against Kimbleton. Nonetheless, we note that as of February 3, 2012, Del. Code tit. 24, § 2912(a) was rewritten as "A licensee shall be subject to disciplinary sanctions set forth in § 2914 of this title if after a hearing, the Commission finds that the licensee" violates any of a series of subsections. The revised statute eliminates any

6

Moreover, we find Kimbleton's challenges to the District Court's conclusions unavailing. As to Ward, Kimbleton argues that the District Court ignored the fact that "but-for Ward, no hearing would have taken place." (App. Br. at 32-33.) But as she concedes in her brief, it was the DOJ that "ultimately retained final say over whether or not the case would proceed further if the complaint was substantiated." (*Id.* at 33.) And it is of course absurd to suggest that Ward somehow violated her substantive due process rights by referring a complaint he found to be substantiated to the DOJ for further proceedings. Perhaps anticipating this fatal flaw in her argument, Kimbleton claims that the complaint was only substantiated because Ward manufactured evidence. However, as the District Court correctly determined, such allegations are simply not supported by the record.

As to White, Kimbleton argues that White instituted a bogus complaint against her, forcing her to retain an attorney and delaying reinstatement of her broker's license. However, Kimbleton does not dispute that White received a map with her advertisement on it indicating that she was a broker. Instead, she emphasizes that he had never filed a complaint before and did not know where the map originated. In any event, even assuming that White was somehow negligent in filing the complaint, his decision to do so can in no way be seen as violating Kimbleton's substantive due process rights. *See Miller v. City of Phila.*, 174 F.3d 368, 375-76 (3d Cir. 1999) ("[T]he standard of culpability for substantive due process purposes must exceed both negligence and deliberate

mention of filing a verified complaint.

7

indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'").

## III.

In light of the foregoing, the judgment of the District Court entered on September 4, 2014, will be affirmed.