**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1935
_____

SARIN KADAKIA,
Appellant

v.

RUTGERS, The State University of New Jersey;
ROBERT WOOD JOHNSON MEDICAL SCHOOL;
SARANG KIM
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 2-13-cv-02450)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1(a)
November 13, 2015
_____

Before: CHAGARES, RENDELL and BARRY, Circuit Judges

(Opinion Filed: December 3, 2015)
_____

OPINION[*]
_____

BARRY, Circuit Judge

      Sarin Kadakia appeals the order of the District Court granting summary judgment

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

in favor of Rutgers, The State University of New Jersey ("Rutgers") and Dr. Sarang Kim. For the following reasons, we will affirm.

I.

Kadakia began his undergraduate studies at Rutgers in 2005 and was accepted into a joint degree program with Robert Wood Johnson Medical School ("RWJMS") two years later.[1] He was dismissed from the program during his fourth year for exceeding the number of failed courses permitted under the Academic Rules and Regulations and for his persistent academic difficulty.

Those Rules and Regulations set forth the school's grading system and the procedures applicable to students experiencing academic difficulty. They provide that, during the student's first two years of medical school, the Academic Standing Committee ("ASC" or "the Committee") will review the student's academic record if he receives "two or more initial grades of 'Fail' in preclinical courses" within one academic year. (DA67.)[2] With regard to third- and fourth-years, the ASC reviews for "one or more initial grades of [Conditional Pass], Fail and/or [Withdrawal] in a clinical course." (DA80-81.) A third- or fourth-year medical student is considered for dismissal if he receives two initial grades of Fail or three or more initial grades of Conditional Pass ("CP") in the clinical curriculum—for the purposes of that determination, initial grades of

---

[1] At the time this litigation commenced, RWJMS was part of the University of Medicine and Dentistry of New Jersey ("UMDNJ"). Kadakia initially named as defendants UMDNJ, RWJMS and Sarang Kim, but UMDNJ was later dissolved and integrated into Rutgers pursuant to the New Jersey Medical and Health Restructuring Act. Rutgers was thereafter substituted for UMDNJ as a named defendant in this action.

[2] "A" refers to the Appendix; "DA" refers to the Supplemental Appendix.

2

CP are "equivalent to one-half of an initial grade of Fail." (DA81.)

Notwithstanding his impressive undergraduate credentials, Kadakia encountered academic difficulty early on in the joint degree program. He was considered for dismissal after receiving initial grades of "Fail" in Neuroscience, Clinical Pathophysiology and Behavioral Science & Psychiatry. A hearing was held by and before the ASC on July 15, 2010; the Committee voted against dismissal but placed Kadakia on academic warning and ordered him to repeat three courses. He was permitted to begin his third-year medical school curriculum after completing the remediation program, but continued to struggle. In his first clinical year Kadakia received initial grades of Conditional Pass in two clerkships, Pediatrics and Psychiatry. These grades prompted additional review by the ASC, which later expressed its "exceptional concern regarding" Kadakia's "most recent addition to [his] record of academic difficulty." (DA149.)

Kadakia's "difficult[ies]" continued when he entered his Medicine clerkship. This clerkship lasted from April 23, 2012 to June 15, and he was formally evaluated at its close by six physicians. While he submits that he received glowing reviews with one or two "areas to work on," the written evaluations show that he failed to achieve a requisite level of proficiency with regard to multiple required competencies. Appellant's Br. at 9. Appellee Kim, the medical school's Site Director, was responsible for reviewing these evaluations and compiling them into a formal evaluation for the Clerkship Director, who later determined that Kadakia's performance merited a grade of "Fail" for the Medicine

clerkship.[3]     Kadakia appealed his grade twice, first to Dr. Kim as Site Director, and second to the Student Education Committee ("SEC").  After the first appeal was denied, the SEC reviewed both the evaluations submitted for his performance in the Medicine clerkship and, significantly, a letter of recommendation authored by Dr. Kashif Janjua, Kadakia's preceptor and advisor for that clerkship.  Kadakia claims that this letter is inconsistent with, and should therefore displace, the evaluations reflecting his poor performance.  Nevertheless, the SEC "voted to deny [his] appeal and assign a final Clerkship grade of Fail." (DA262.)

On October 15, 2012, Kadakia received notice that he would be considered for dismissal because he received a grade of Fail in the Medicine clerkship, and two grades of Conditional Pass in the Pediatrics and Psychiatry clerkships, which added together (as the Rules require) amount to an additional grade of initial Fail.  In response, Kadakia retained counsel, solicited letters from faculty attesting to his qualifications, and submitted a letter authored by his attorney opposing dismissal.  He presented a statement at the ASC's dismissal hearing and responded to questions posed by the Committee.  These efforts notwithstanding, the ASC voted to dismiss Kadakia from RWJMS due to his "persistent academic difficulty and [for] exceeding the limitation on the number of failed blocks or courses."  (DA210.)  His subsequent appeal to Dr. Amenta, Dean of the

---

[3]     Each clerkship grade consists of an objective component based on the National Board of Medical Examiners SHELF exam, and a subjective component based on physician evaluations.  The subjective evaluation accounts for 80% of the grade, and the SHELF exam 20%.  Kadakia passed the SHELF exam for his Medicine clerkship.

Medical School, was unsuccessful and his dismissal took effect on January 7, 2013.

Kadakia filed this action on March 21, 2013 in the Superior Court of New Jersey, Essex County. He alleged that the defendants violated his due process rights under the United States Constitution (count 1) and under the New Jersey Constitution (count 2), and violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 (count 3). The action was removed to federal court shortly thereafter. The parties filed a joint stipulation dismissing count three with prejudice, and defendants moved for summary judgment. By an opinion and order dated March 24, 2015, the District Court granted defendants' motion and dismissed the action.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and … is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

In granting the motion for summary judgment, the District Court held that (1) even assuming Kadakia had a protected interest in continuing his studies at the medical school, his substantive due process claim failed because his dismissal was not arbitrary or capricious; and (2) he was afforded far greater procedural due process than that which was constitutionally required under the circumstances.

A.

To establish a substantive due process claim, Kadakia was required to show that he was deprived of a fundamental property right through an arbitrary and deliberate abuse of authority. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000).[4] The Supreme Court has twice considered a claim arising out of circumstances similar to those presented here, and in both cases assumed, but did not recognize, that a substantive due process right existed. In *Board of Curators of the University of Missouri. v. Horowitz*, 435 U.S. 78, 91-92 (1978), the Supreme Court assumed, without deciding, that federal courts can review the academic decisions of a public educational intuition under a substantive due process standard. And in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 222-25 (1985), the Court, "remembering Justice Brandeis' admonition not to 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied,'" again chose to assume, rather than

---

[4] The Supreme Court of New Jersey has held that, "[i]n cases raising substantive due process claims under [the New Jersey] state constitution, this Court uses the standards developed by the United States Supreme Court under the federal Constitution." *Roman Check Cashing, Inc. v. N.J. Dep't of Banking & Ins.*, 777 A.2d 1, 3 (N.J. 2001). Our analysis of Kadakia's claims "is the same under both constitutions." *Id.*

conclusively recognize, the existence of a protectable right in a student's continued enrollment in a dual degree program. *Id.* at 222 (quoting *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

We have since ruled in similar fashion. In *Mauriello v. University of Medicine & Dentistry*, 781 F.2d 46, 52 (3d Cir. 1986), we expressed "doubt about the existence" of a substantive due process right in a student's continued enrollment at a state university's graduate program but, "following the lead of the Supreme Court," assumed that, under the circumstances of this case, such a constitutional right was implicated. In considering whether that "right" was violated, we observed that judges must show "great respect for the faculty's professional judgment," *id.* at 50 (quoting *Ewing*, 474 U.S. at 225), and found that because the plaintiff's dismissal was not "beyond the pale of reasoned academic decision-making," it was not arbitrary for the purposes of a substantive due process analysis. *Id.* at 52 (quoting *Ewing*, 474 U.S. at 225.)

Kadakia provides no principled basis to assuage this Court's "doubt," in *Mauriello*'s word, as to the existence of a substantive due process right. But even assuming that his "right" to a graduate level public education is constitutionally protected, his challenge nonetheless fails because he was dismissed for legitimate academic reasons. He was placed on academic warning after receiving an initial grade of Fail in three pre-clinical courses, and subsequently notified of the school's "exceptional[] concern" regarding his clerkship grades. His poor performance in the Medicine clerkship qualified him for dismissal under the Rules and Regulations, and he was thereafter

7

dismissed for both "persistent academic difficulty and exceeding the limitation on the number of failed … courses." (DA210.) Ample evidence supports this determination.

## B.

Kadakia's procedural due process claim is similarly deficient. The essence of a procedural due process claim, of course, is notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985). When a student is discharged for academic, as opposed to disciplinary, reasons, all that is required to satisfy procedural due process is "an informal faculty evaluation with the student." *Mauriello*, 781 F.2d at 51; *see also Horowitz,* 435 U.S. at 85-86 (a student is entitled to only an "informal give-and-take" with the administration so that he may "characterize his conduct and put it in what he deems the proper context."). In *Mauriello,* we found that a graduate student's procedural due process rights were satisfied because "[she] was informed of her academic deficiencies, [] given an opportunity to rectify them during a probationary period before being dismissed, and [] allowed to present her grievance to the graduate committee." 781 F.2d at 52.

Kadakia was accorded far greater process than that found sufficient in *Mauriello*; indeed, he does not dispute that he received repeated written notices of his academic failures and consistently availed himself of his right to be heard and remediate the issue. His procedural due process claim fails.

## IV.

The order of the District Court will be affirmed.

8