NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-2623

———————

CHARLES MORGAN,

Appellant

v.

MICHAEL FIORENTINO, JR.;
DEANA HILL;
THE PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION;
LOCK HAVEN UNIVERSITY OF PENNSYLVANIA

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-17-cv-01142)
District Judge: Honorable John E. Jones, III

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
April 14, 2020

Before: AMBRO, JORDAN and SHWARTZ, Circuit Judges

(Opinion filed April 27, 2020)

———————

OPINION[*]

———————

AMBRO, Circuit Judge

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Charles Morgan appeals from the District Court's grant of summary judgment, on the basis of qualified immunity, to the Pennsylvania State System of Higher Education ("PASSHE"), Lock Haven University ("LHU"), Michael Fiorentino, and Deana Hill (collectively "Appellees") on Morgan's claims under 42 U.S.C. § 1983, alleging violations of his substantive and procedural due process rights. He also appeals the adverse judgment on his Title VII claim for failure to establish a *prima facie* case of sex discrimination. In addition, he challenges the District Court's failure to give preclusive effect to the Pennsylvania Commonwealth Court's decision in *Pennsylvania State System of Higher Education v. Ass'n of Pennsylvania State College & University Faculties*, 193 A.3d 486 (Pa. Commw. Ct. 2018) (hereinafter "*PASSHE*"). For the reasons stated below, we affirm the decision of the District Court.[1]

## I.    Background

Morgan is a tenured professor of mathematics at LHU in Pennsylvania where he has been employed since 2004. When he initially applied for a position as an assistant professor at LHU in 2004, he was asked on his employment application whether he had been convicted of any criminal offense within the past ten years. In 1990, Morgan, then under twenty-one years old, pled guilty to one count of sexual assault and two counts of sodomy resulting from acts taken with two minors. As this was a nearly fifteen-year-old conviction at the time he was applying to LHU, he answered truthfully that he had not been convicted of an offense within the past ten years.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). We have appellate jurisdiction under 28 U.S.C. § 1291.

The Pennsylvania General Assembly amended the Commonwealth's Child Protective Services Law ("Child Protective Law"), 23 Pa. Cons. Stat. §§ 6301 *et seq.*, to apply to prospective employees having direct contact with children. This change required prospective employees to receive a background check and prohibited schools from hiring applicants previously convicted of certain impermissible offenses such as sexual assault and sexual abuse of children. § 6344(c). Had Morgan been a prospective employee at the time, these changes would have barred LHU from hiring him, but as a current employee the new ban did not apply to him. *See id.*

In response to these amendments, PASSHE issued the University Protection of Minors Policy Handbook ("Minors Policy") to develop a criminal background investigation policy in the employment context. This policy applied to all current university employees, and LHU adopted the policy. Thereafter, the Child Protective Law was again amended to clarify that it did "not apply to an employee of an institution of higher education whose direct contact with children, in the course of employment, is limited to either: (A) prospective students visiting a campus operated by the institution of higher education; or (B) matriculated students who are enrolled with the institution." 23 Pa. Cons. Stat. § 6344(a.1)(2)(ii).

The Commonwealth Court subsequently enjoined PASSHE from requiring faculty members to submit clearance "except with respect to PASSHE employees who teach courses containing dual enrollees or who are involved with programs that require employees to have direct contact with children." *PASSHE*, 193 A.3d at 491. Further, "all PASSHE employees teaching an introductory level course, often referred to as a '100-

3

level course,' must submit Section 6344 clearances." *Id.* The Pennsylvania Supreme Court affirmed. *See PASSHE*, 161 A.3d 193 (Pa. 2017).

Pursuant to the new Minors Policy, LHU required Morgan, as a professor scheduled to teach an introductory-level mathematics course, to submit to a background check, and he complied. It revealed his 1990 conviction. On receiving this information, LHU's President Michael Fiorentino informed Morgan on April 6, 2016, that LHU planned to conduct a fact-finding investigation, that he had requested additional information from the Commonwealth of Kentucky (where Morgan's conviction had occurred) "so that the University had a better understanding of the circumstances surrounding [his] prior situation before taking any action," and that Morgan was being placed on paid administrative leave. App. 205. The records of his conviction were attached to the notice.

Morgan attended the fact-finding meeting on April 15, 2016, with a representative from the faculty union, where he explained to Associate Vice President of Human Resources Deana Hill that he had not had any criminal issues since his 1990 guilty plea, had consistently obeyed LHU's policies, was a "safe member of the faculty," and always kept his office door open to avoid ever being "under suspicion." App. 865. Then on May 9, 2016, Fiorentino held a pre-disciplinary conference attended by Hill, Morgan, and Morgan's union representative where they discussed Morgan's past conviction. Additionally, Fiorentino gave Morgan the opportunity to provide any additional information to the investigative report. Morgan clarified that the version of the Child Protective Law that was included in the investigative report had since been amended, and

reiterated that "[t]wenty-seven years [had] passed" since his arrest and subsequent conviction, and he was "not the same person as [he] was then." App. 195.

Two days later, Fiorentino sent Morgan a letter formally terminating his employment at LHU "because of [his] criminal conviction of a reportable offense(s) as defined by the [Child Protective Law]." App. 868. Fiorentino considered that Morgan's regular teaching duties included an introductory level course with non-matriculated students and an annual academic program for high school students, as well as the "strong policy statement from the General Assembly" in passing the Child Protective Law that would have barred Morgan as a new hire. App. 869. Accordingly, he determined that "[t]he nature of [the] convictions involving the sexual victimization of minors is so significant that the passage of time does not weigh in favor of discounting the severity of these convictions." *Id.*

Morgan challenged his termination under his collective bargaining agreement before an arbitrator, who concluded that Morgan's termination was without just cause and ordered reinstatement. *PASSHE*, 193 A.3d at 502–03. The Pennsylvania Commonwealth Court affirmed the decision. *Id.*

Morgan brought suit against PASSHE, LHU, Fiorentino, and Hill in June 2017, alleging, as relevant here, that Fiorentino and Hill deprived him of his substantive and procedural due process rights, and that PASSHE and LHU discriminated against him because of his sex in violation of Title VII. As to the civil rights claims, the District Court granted summary judgment in favor of the Appellees, ruling that Hill and Fiorentino were entitled to qualified immunity because it was not "clearly established"

5

that the termination procedure and eventual termination were unlawful. App. 21. As to the Title VII violations, the District Court granted summary judgment to PASSHE and LHU because Morgan failed to point to anything in the record establishing any causal connection between his gender and his termination. It accordingly denied Morgan's cross-motion for summary judgment. This appeal followed.

## II. Discussion[2]

### A. *Procedural Due Process*

Fiorentino and Hill are entitled to qualified immunity on Morgan's procedural due process claim.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation and internal quotation marks omitted). To determine whether qualified immunity applies, we ask "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (citation omitted). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731,

---

[2] We review a district court's order granting or denying summary judgment *de novo*, using the same standard employed by the District Court. *Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002). Construing all facts in the light most favorable to the non-moving party, summary judgment is proper only if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 276–77 (quoting Fed. R. Civ. P. 56(c)).

6

741 (2011), such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment on qualified immunity is appropriate." *Id.*

We conduct a two-part inquiry for procedural due process claims, asking, "(1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (citation and internal quotation marks omitted). It is undisputed that Morgan had a property interest in his employment; thus we proceed directly to the second prong of the inquiry. A "public employee with a property interest in his or her job is entitled to a 'pretermination opportunity to respond, coupled with post-termination administrative procedures.'" *Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 84 (3d Cir. 1989) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985)). "In particular, a 'tenured public employee is entitled to [pretermination process consisting of] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* (quoting *Loudermill*, 470 U.S. at 546).

Regardless of whether Morgan's right to procedural due process was violated, it was not "clear" to a reasonable person in Fiorentino or Hill's position that the predeprivation process provided was constitutionally inadequate. After the background check revealed his 1990 conviction, Fiorentino wrote to Morgan informing him that LHU intended to conduct a fact-finding investigation "in response to information that has come

7

to our attention as a result of criminal background clearances" and that it had requested "[a]dditional information" so that LHU "had a better understanding of the circumstances surrounding [his] situation prior to taking any action." App. 205. As additional notice and explanation, Fiorentino attached copies of the records received as part of the background check.

At the fact-finding conference, Morgan was given an opportunity to relay any information that would be helpful to his disciplinary decision. Indeed, Morgan participated in the conference, highlighted his exemplary record since his conviction, and reiterated that he was a different person. Further, Fiorentino and Hill held a pre-disciplinary conference to discuss the conviction, at which Morgan, accompanied by a union representative, was once again given the opportunity to provide additional details. He used that opportunity to advocate for himself and point out the amended Child Protective Law was not included in the investigation documents, demonstrating his notice of that law.

We have never required an employer to disclose every detail of its basis for a termination decision prior to termination in order to satisfy due process. *See, e.g.*, *Copeland v. Phila. Police Dep't*, 840 F.2d 1139, 1145 (3d Cir. 1988) (holding that there was no violation of procedural due process where police officer was suspended based on a urinalysis without having been advised of the specific results "[g]iven [his] status as a police officer, his having submitted to a prior urinalysis, his awareness of the reason for the current test, and his being advised that he had tested positive"). Accordingly, this is not a situation in which "it would be clear to a reasonable officer that his conduct was

8

unlawful in the situation he confronted," *Saucier*, 533 U.S. at 202, and Fiorentino and Hill are entitled to qualified immunity on the procedural due process claim.

### B. *Substantive Due Process*

Morgan alleges that Fiorentino violated his substantive due process right when he applied the Child Protective Law to terminate him even though Fiorentino knew that it did not apply to existing employees.

"To prevail on a non-legislative substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000) (citation omitted). This inquiry "is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Id.* at 140. In that context, a property interest in a tenured professorship is not entitled to substantive due process protection. *Id.* at 138.

Thus Morgan fails as a threshold matter to establish that he has a substantive due process right in public employment, regardless of whether Fiorentino knew the Child Protective Law did not apply to Morgan at the time of termination or whether Fiorentino terminated Morgan because of the law. Accordingly, Appellees were entitled to summary judgment on this claim.

### C. *Title VII Claims*

Morgan also contends that questions of fact remain as to his Title VII gender discrimination claim; thus summary judgment in favor of the Appellees is inappropriate. A *prima facie* case of gender-based employment discrimination requires a plaintiff to show: 1) membership in a protected class; 2) qualification for the position; 3) an adverse employment action taken against him despite being qualified; and (4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). In essence, the plaintiff must establish "some causal nexus" between membership in the protected class and the termination decision. *Id.* at 798. Impermissible stereotyping may support this inference. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003).

The gist of Morgan's claim is that Fiorentino terminated him based on the impermissible stereotype that males are more likely to perpetrate sexual abuse. But Morgan has failed to point to anything in the record that would demonstrate that his termination was because of his being a male or based on stereotypes associated with males. Indeed, that Fiorentino "thought of" the Jerry Sandusky case involving Penn State University—because it was "very prevalent [and had] received a great deal of press and had an impact on the well-being of the University," App. 94–95—is insufficient to show impermissible stereotyping, let alone indicate an inference of gender discrimination. The same is true for Fiorentino's statement in Morgan's termination letter that "[t]he nature of [his] convictions . . . is so significant that the passage of time does not weigh in favor of discounting [their] severity." App. 869. Accordingly, we affirm on this claim as well.

*D. Full Faith and Credit*

10

Finally, Morgan contends that the District Court erred in declining to give preclusive effect (and thereby accord full faith and credit) to the Commonwealth Court's ruling in *PASSHE*, 193 A.3d 486, on his substantive due process claim.

Under collateral estoppel and preclusion principles, "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." *Walker v. Horn*, 385 F.3d 321, 336 (3d Cir. 2004) (citation omitted). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Id.* at 237 (citation omitted).

Collateral estoppel applies per Pennsylvania law where: "(1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action." *Id.*

We easily determine that the first requirement is not met here. In *PASSHE*, the Commonwealth Court upheld an arbitrator's award finding that "PASSHE lacked just cause for the termination, holding that the preponderance of evidence showed that [Morgan's] youthful criminal acts had not followed him into middle age." 193 A.3d at 494. It had no occasion itself to rule that Morgan's substantive due process rights were violated by his termination. In any event, the District Court aptly noted, even if it were to give preclusive effect to those findings, they would not be dispositive because the Court

11

was considering not whether there was a constitutional violation, but rather whether a reasonable official would have understood that what he was doing violated constitutional rights. And here we hold on *de novo* review that Morgan did not have any substantive due process right in his employment under federal law, so any state court findings as to the constitutionality of blanket employment bans are irrelevant to our disposition.[3]

*   *   *   *   *

We affirm the decision of the District Court.

---

[3] Morgan's argument that the District Court violated the Constitution's Contract Clause by failing to give full faith and credit to the arbitration award also comes up short. To determine whether legislation violates the Contract Clause, we apply a three-part analysis, one part of which asks "whether the law has operated as a substantial impairment of a contractual relationship." *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union v. Virgin Islands*, 842 F.3d 201, 210 (3d Cir. 2016). Morgan does not allege that any legislation impaired his contractual relationship. Rather, he argues that the District Court "de facto" applied the Child Protective Law, which impaired his collective bargaining agreement with LHU. The Court did not "de facto" apply the Child Protective Law. However, even if it had reasoned that the Child Protective Law applied, its decision granting qualified immunity to Appellees on Morgan's constitutional claims did not impair his relationship with LHU under his collective bargaining agreement. Thus, Morgan's Contract Clause claim fails.